5-12-043, consolidated 5-12-0047. May it please the court, Robert Macalosky on behalf of National Freight. We have a question for your honors. How would you like us to argue this case? Argue it in 15-15-10. And the 10 being you can address the cross-appeal in your reply. You get an additional 5 minutes. Okay, and would I go on my rebuttal after counsel argues on my case and then they argue that second part of the case? I believe you have one cross-appeal, right? Right. Okay, well, you can address it in your reply. Okay. Additional time granted to your reply. Thank you, your honor. I've never done this for the two cases combined, so. As I indicated, Robert Macalosky on behalf of National Freight Council. It's our appeal from a decision of the Industrial Commission where the Industrial Commission found that the incident or occurrence of December 4, 2008 at National Freight broke the causal connection chain from the prior incident occurred at Fisher Lumber. When you look at the facts of this case, this gentleman in 1995 had back surgery, recovered from that back surgery, went to work for Fisher Lumber, and in November of 2006 was doing some lifting of boxes of siding, injured his back. He had an MRI done in December of 2006 that showed two herniated discs at L2, L3, L3, L4. He got laid off shortly thereafter from Fisher Lumber. He was under work restrictions of no lifting more than 10 pounds, no repetitive bending, stooping. He was under the care of his treating physician, Dr. Eplin. Dr. Eplin was treating him conservatively. He was seeing the doctor, receiving medication. His complaints continued to get worse to the point where he eventually went to a physician, a Dr. Kitchens, in September of 2008, complaining of constant low back pain, right leg pain. The doctor reviewed the MRI. He returned on September 25, 2008, to that doctor. And that doctor on that date recorded occasional discomfort in the left side as well as the right side. And he indicated to this person that he was scheduled for surgery December 5, 2008. So you're disputing that there was an independent intervening cause? What we're disputing is that he had an incident on December 5, 2008. He received, I mean December 4, I'm sorry, 2008. He received no treatment for that incident, if you look at the records. He reported to his doctor for surgery on December 5. He forgot his films. The surgery was postponed. And he advised the physician that he had this other incident where his back pain increased to include more increased pain in the left leg. They wound up doing a series of diagnostic studies, an MRI on December 10, and then some more sophisticated studies, a CT scan post-molegram. And he went to a doctor. He was examined by Dr. Kennedy, a physician chosen by Mr. Smith. And Dr. Kennedy, when he initially saw him January 21, reviewed the MRI study from December 10, 2008, and it showed a large herniated disc, which he did not think changed that much from the earlier studies, from the study done in September of 2008. You're not disputing the claimant had a preexisting condition when you hired him, correct? Correct. You're not disputing he sustained an injury while he was employed with you, correct? We're not disputing that he had an incident that occurred. The question is whether or not that incident that occurred broke the causal chain, as indicated in vocal. What if it didn't break the causal chain and it aggravated a preexisting condition and you have to take your employee to find him? Not according to vocal, Your Honor. In vocal, it kind of changed the rules. And when vocal came out, it was a surprise to, I think, all of us. But in vocal, it indicated that if there is a work-related injury and then there is a subsequent occurrence, in vocal there was actually three separate automobile accidents, three separate injuries. He was recovering from his cervical fusion. As a result of those injuries, especially the second injury, he developed pseudoarthritis and wound up having additional treatment for that. And the argument in vocal was if the work-related condition plays a part in the causal connection, even though those subsequent accidents, be it at work or away from work, if they aggravate or worsen that condition, the party that caused the initial injury is still liable. And that's there in a sense to protect the claimant. Because of the but-for, they used the but-for argument, but for the weakened condition, this other injury or injuries may not have caused the damage that it did. And when you look at the facts in this case, Your Honor, Dr. Kennedy stated that the employee had symptoms beginning November 2006 while working at Fisher Lumber, which had been aggravated by the most recent motor vehicle accident, but noted that his symptoms predated this and he already had been scheduled for surgery. Dr. Kitchens, who was the surgeon, indicated that... Let me see if I can call out the essence of your theory. You're arguing, A, obviously there was no independent intervening cause. You're arguing, B, there was no aggravation either. Right. Okay. I think the record clearly shows that when you look at the statements of Dr. Kitchens, he said that the December 10, 2000 MRI and September 18, 2000 MRI noted change in the disc herniation. We didn't cause the new herniation. What we did, according to Dr. Kitchens, is that the herniation became larger after our injury and more central. In that same group of sentences, he indicated that the petitioner would benefit from the previously planned surgery, the surgery was already planned, as well as operative intervention at L4, L5. Let me ask you this. There's evidence that shows the claimant's symptoms changed after the motor vehicle accident. Following initial injury in 2006, he complained primarily of low back pain and numbness. Second, there's evidence in the record that the motor vehicle accident caused a change in the pathology. You've alluded to the MRIs and the change in the MRIs. You've got the type of surgical intervention the claimant required changed as a result of the motor vehicle accident. His ability to work changed following the motor vehicle accident. That's not all correct, Your Honor. He was not going to be able to work starting December 5, hours before, I mean hours after the injury in question. He already had symptoms in his low back, in his right leg, and when you look at September of 2008. But he returned to work without restrictions, right? No, no. He was working with restrictions from his prior injury. He was working with us with restrictions from his prior injury. He never stopped treating from his prior injury. He was scheduled to have the surgery on December 5, 2008 from the prior injury. You're saying he did not work continuously for you in various positions until he was taken off the road? Working with a 10-pound restriction because of his previous injury. But he was working with you until he had the motor vehicle accident, right? Right. And as of December 5, he wouldn't have been working for us regardless of whether or not he had an injury on December 4 because he was scheduled for surgery on December 5 from this condition. So what is your theory of this? Did the motor vehicle accident do anything? Other than have an incident and possibly, according to one physician, there's a disagreement between the physicians, make the already herniated disc larger and more central. Make the pre-existing condition that was there because of the injury at Fisher larger. Remember, in Vogel, all you have to show not to break the causal connection change is that it's part of. You have to show a complete break. We don't have a complete break here. The surgeon's saying, I'm doing the surgery on the same disc. It's just larger. And because it's larger now, because this injury, according to Kitchens, aggravated or worsened the condition, we're going to change the nature of surgery. We didn't change the underlying condition. And when you look at Vogel, the car accidents did result in a different type of surgery, a surgery for the pseudoarthritis. It wasn't for a redo of the fusion. It's because of the weakened condition on top of the new injuries. The weakened condition was already there. And when you look at all the comments of all these physicians, when you look at the opinion of Dr. Chu, who reviewed the radiographic studies, he said that the December 10, 2008 MRI itself did not dramatically differ from the earlier September 2008 MRI done prior to the incident of December 4, 2008. He indicated that the MRI September 18, 2008 showed the two disc herniations. He said since the MRI September 2008 already had two herniated discs, one at L2, three level on the right side, one at L3, L4 on the left, as I have said before, it's not different. It's not dramatically different than it was in 2008. Dr. Kennedy said that the employer required operative intervention and that the motor vehicle accident worsened his condition, worsened the condition. It didn't cause a new condition, it worsened the condition. Dr. Kitchens felt as a result of the December 4, 2008 incident, the disc herniation worsened. So tell us succinctly why the commission's decision is against the manifest way of the evidence. Because they didn't follow the law under Vogel. They didn't understand Vogel. Vogel is an independent intervening clause case. That's up to the commission to decide, isn't it? Judge, if we accept your argument, if we accept the way you're approaching the case, then Vogel never would have happened because you would have argued this person has three auto accidents and although there was a preexisting condition, those auto accidents worsened or changed the condition where he needed additional surgery. We don't assume that. The commission has to find that. No, but the commission ignored Vogel and it's against the manifest way of the evidence. I'm arguing that they ignored the case law in Bob. And the case law says that if the work injury plays a part in the need for the additional care and treatment, just a part, and it did in this case because they're operating on the same disc, if non-work related or work related injuries make it worse, okay, then the party responsible for the work injury can't walk away. Let's look at the case the way you're approaching the case. Let's say that Mr. Smith is scheduled for surgery on December 5, 2008. Instead of being in my vehicle, he's driving home. He has a little fender bender outside of the workplace. And the doctor says, well, now the disc is a little bigger, so we're going to have to do a different surgery. So you, the employer, you're not responsible for the injury you caused and you're not responsible for the weakened condition that you put Mr. Smith in. The employer is totally free because you had this fender bender that slightly changed the surgical procedure on the disc that was already injured. When you look at the statement of Dr. Kennedy, Dr. Kennedy says that because of the initial injury that occurred at Fisher Lumber, this person was put in a weakened condition. This person was more susceptible to injury because of this. So even if he was more susceptible, would that mean that there was an injury? Yes, Your Honor. If you follow the law under Vogel, Fisher Lumber is responsible. If you're going to change the law under Vogel, then what's going to happen each and every time one of us respondents, attorneys, appears before you and there's some minor injury, there's the lifting of the weights that you were talking about. You'd have to document the aggravation and the changed condition. It isn't that there's an injury, there's an accident, and automatically it goes back to the second employer. There has to be evidence in pathology, symptomatology, all of those things. And there is none, Your Honor. It's still the same condition. It's still the same disc that he had the surgery on, but because he was in a weakened condition, okay, he was put at risk. And so if we accept your argument again, then you're changing Vogel. The commission has to follow Vogel. It's a question of law with Vogel. They didn't apply Vogel, okay? What's changed in this case? Other than the disc got bigger because of this intervening accident or occurrence in one physician's opinion. In the other physician's opinion, the MRIs didn't change, okay? What's changed here? How does Fisher Lumber walk away from the responsibility they have because this person was put in a weakened condition? You have to accept Dr. Kennedy's opinion. No one disagreed with Dr. Kennedy because of this injury. He was put in a weakened position, made more susceptible to injury to those discs. So we ask that you reverse the decision of the Industrial Commission. It's contrary to the law. It's against what Vogel stands for. And if you don't, then we're going to have everybody coming up here and saying, oh, you know, that broken arm that the person had, he had that fall at home. So instead of the two screws that we're going to put in the arm, we're going to put three screws in the arm. Or that knee condition that was caused by the employment. You know, he slipped and fell. And now in addition to that meniscal tear, we now have a hematoma, or we now have a chip fracture. So the party who caused that meniscal tear is going to walk away. That's why Vogel was put in place. That's why the appellate court. What happens if the initial injury was a simple break in the arm and the second event causes a compound fracture? You going to blame it on the first one? Well, you can't let the first one. If the initial break, Your Honor, caused that person to be in a weaker condition or more susceptible, when you read Vogel, when you read Dr. Kennedy's testimony, then the answer to your question would be yes, even though there was an intervening action that caused a more serious injury, but for the injury that he sustained and the weakened position he was put in that might not have occurred. It's not breaking the causal chain. And when you look at Vogel, they make it very clear. Counsel, your time is up. You'll have time to reply. Thank you, Your Honor. Are you splitting your time? I guess so. Yes. I'm Leslie Collins, attorney for Mr. Smith. May it please the Court. Basically, I am arguing that, you know, due to the change in the clinical symptoms, the presentations, and the pathology, which are all requirements. Well, let's hone in on that because your opponent has clearly thrown down the challenge. He's saying there was no change. It only was a result of symptomatology. Everything was a result of the existing condition. There was a little bit of a change in the gap, but there was nothing else there. So tell us why there was a change. Well, I mean, if we look, you know, at Mr. Smith's testimony, he did say he had had some left leg pain, but to this point, his testimony was it was almost, at this point, after the second accident, it was unbearable. He was unable to return to work. Okay, prior to this, he was working for National Freight. He was working full duty, even though he was on restrictions. He worked 50 to 60 hours a week. He was doing his job. Subsequent to this accident, he was unable to work. And I know National Freight has the argument that he was going to be unable to work anyway because he was having surgery, but because of this accident, he was completely unable to work due to this accident. Was your argument that the second accident changed the nature of his injury? Yeah, it did. I mean, I think it did. If you look at that and you look at, and I think if you look at the doctor's testimony, due to the fact, Dr. Kitchen said there was an interval change in the disc herniation at L4-5, it changed the procedure that he was going to have to perform. It went from a one-level right-sided microdiscectomy to a laminectomy with a fusion at L3, L4, and L5. As a result of the second accident. As a result of the second accident. So we believe that there was a break in the causal chain. I mean, that's our argument, and we believe that National Freight should be held accountable. So Justice Hudson asked about the change in the condition. He started off talking about the claimant's symptomatology and ability to return to work and so forth. But at least in my mind, I'm thinking that in order to address this question, it's more a matter of the objective medical evidence that has to be examined to determine whether or not there has been a change in the actual physical structures, a change in the condition, as opposed to what symptoms might have been present. Because there, if you're getting into the symptomatology and the ability to return to work, you're getting more into aggravation type of an inquiry. But from a medical standpoint, what is it that you can hone in on? What's your most powerful piece of evidence that establishes that there was an actual change in the structural defects, whatever you might be able to point to objectively? Well, I think if you look at the depositions of Dr. Kitchens, I think he clearly notes the change in the herniations. I think he said in the September 2008 MRI, there was a herniation that was central and to the left. In the December 2008, it's not only larger, but it's central and it's both to the right and to the left with significant nerve root compression. That was not noted prior in the September 2008 MRI. So I think on that, that was the basis in the change for Dr. Kitchens' opinion regarding the procedure that was going to need to be performed. Had this accident not happened, Mr. Smith would have had a simple microdysectomy and would have gone on from that. We don't know what would have happened, obviously, because we had this intervening accident. We don't know if after that microdysectomy he was going to be able to return to work. We don't know. What we do know is we have this accident of December 4, 2008 that caused this condition, required a completely new procedure based on that December 2008 MRI. That's why Dr. Kitchens changed his opinion and his decision as to what procedure Mr. Smith had to have because of that accident. Had that accident not occurred? He changed it because of the condition that he observed in that second MRI. That's correct, based on what he observed in the MRI. I could suggest that change in condition is a result of the second accident. I think if we look at... I mean, other than a chain of events or something or relative influence. Well, I think we just have to look at the two MRIs from September. Well, we know one MRI shows one thing. The second MRI shows a different change. Right, which was performed a few days after... Do you have any opinion that the second incident caused that change? I think we need to look at the testimony of Dr. Kitchens and Dr. Kennedy because I think they both agree, looking at that, that both of them, especially I believe Dr. Kennedy, says that the change in that is due to that accident. Okay, so we should find that in the record. Yes, I believe that is in the testimony of... Is this an argument of divisibility, where you can attribute a certain portion of an injury to an initial accident and a separate distinct injury to the second accident, even though it's the same portion of the body? Is it a divisibility argument? If it's divisible, then it's the intervening cause. If it's indivisible, it's not? Well, you know, I don't know how we can distinguish... I mean, you know, like I said, because of the change in the condition, it's a new procedure that's being... Well, Kitchens, didn't he give it to you? The original MRI showed a herniation central to the left side. The second MRI shows larger herniation, and it was both to the right and left sides. Right, so I guess we could say, you know, as far as... Are you talking about... Is that a different condition? I believe it's a different... I believe it's a new condition. I mean, this wasn't apparent in September 2008's MRI scan, so I think he has a new condition. I mean, definitely his symptoms and the clinical presentation are dramatically different. And like I said, I think, you know, based on all of that, together with the depositions of Dr. Kitchens and Dr. Kennedy, I think the commission is right. The commission is right that this is a new condition? I believe so, and I don't think... I think the commission is right in finding that there was a break in the causal chain. To me, that's a factual determination that they made, and, you know, we're back to the manifesto of the evidence, because I think that's... I don't think Vogel applies as... What if we proceeded on the theory of an aggravation of a pre-existing condition? Would you end up in the same place? I think so. I mean, if we've got, you know, I mean, if you've got an aggravation of a pre-existing, I think we're here in the... Certainly based on the change in pathology, the larger herniation, the right and the left side, that's clearly an aggravation of something, is it not? Even if you don't want to argue that it's not an independent, doesn't rise to the level of an independent intervening cause, couldn't you have proceeded on that theory as well? We probably could have, yes. And putting aside whether you could have gone down that road, if the commission in this case had found in your opponent's favor that it was an aggravation and not an independent intervening cause, would that finding be against the manifest way? I don't believe so. I mean, I think, you know, if we had gone down that path, I mean, I think, you know, we could definitely show and have proved an aggravation, and had the arbitrator found that and the commission upheld that, then I think we would then still probably be here. Okay. Nothing for you. Any other questions? I don't believe there are. Thank you, counsel. Counsel? Yes. Good morning. My name is Ken Schultz. I'm the attorney for National Freight. I was going to say. You all got to it right at the end of your argument, but you had asked, and you had asked as well, what is your best argument that there was a change in condition? I think the best argument is we've got involvement of a second disc. There was only one disc involved up until the motor vehicle accident. Whether you call it L2-3 or L3-4, the doctors were going back and forth. Right-sided disc herniation at one level, leading all the way up to the motor vehicle accident. No doctor at all had involved this other disc. This left-sided disc at the L3, L4, L5 level, whichever you want to call it. So that was a huge change, a major change. Another question you asked, did any doctor give an opinion as to whether there was a change in pathology? And Dr. Kennedy specifically did. And if you look at pages 14 and 15 of his deposition, which was Petitioner's Exhibit 6 in the transcript, he specifically said that the diagnostic studies after the auto accident showed a change in pathology at this disc, at L4-5 on the left side, and that change in pathology was causally related to the motor vehicle accident. He clearly said that.  Another person who was involved in the study and comparing all the films was Dr. Chu. Dr. Chu's involvement was a one-time MRI, which was done on 12-10-08. Everyone else, Dr. Kennedy, Dr. Kitchens, testified there was a change in pathology at that disc level. Additionally, even the radiologists who prepared the report for that MRI did an addendum and said in comparing the previous MRIs, there was a change in pathology. And I think it's important to note that in Vogel, important to the court was that neither the arbitrator nor the commission had ever found a break in the causal chain. They merely talked about aggravation. And this case, the arbitrator and commission noted three times in their decision that there was specifically a break in the causal chain. Additionally, it was clear from the arbitrator's decision and the decision of the commission that they considered the Vogel case and considered it to be inappropriate. It didn't apply to this case. I think also what Vogel said was, we're not going to find a subsequent intervening accident breaking the causal chain because there was a mere aggravation. And I really don't think that changes the law. The case law has always been, there has to be a major clinical or symptomatic presentation change due to a subsequent intervening accident. Clearly that was the case here. Now, as far as the records and his symptoms are concerned, leading up to the December 4-08 auto accident, in all of the treatment records but one, all of his complaints were right-sided back pain, right leg pain. No mention ever of the left side of his back nor of any pain into the left leg. The only exception was when he went back to Dr. Kitchens in September 08 when he remarked the first time to a doctor that he had occasional pain in the left. Didn't say his leg, just said on the left side. That was it. And then after the auto accident, and he goes back to Dr. Eplin, consistent history of no leg complaints on the left, no left-sided leg complaints until this motor vehicle accident, and he gave Dr. Chu that same history. He did mention to Dr. Kennedy, according to Dr. Kennedy's report in January 09, the first paragraph of the report, he reports that Mr. Smith told him that he was having leg pain after the initial accident in November. But the third paragraph of that report, when he talks about the auto accident, he says that he's had bilateral leg pain, which he had not had prior to that motor vehicle accident. So there are certainly inconsistencies in Dr. Kennedy's initial report. Any questions? I believe there are. Thank you, Counselor. Counselor, you may reply. Sure. Dr. Chu indicated since MRF September 2008, the petitioner has always had two herniated discs. There's always been two herniated discs, not one. One at L2 level on the right side, one at L3, L4. As far as I can tell, this still remains the case in the new CT myelogram that was completed March of 2009. Dr. Kennedy indicated that when asked about findings in both preexisting 2006 and September 2008 MRIs, if the employer was more susceptible to aggravation or injury to those discs Dr. Kennedy testified yes. He agreed that the preexisting problems placed the employee in a weakened position. When you look at Vogel, you have to show whether or not there was a subsequent accident or aggravation. It doesn't break the causal chain. We cited the case of Global Products. For the employer to relieve the liability by virtue of an intervening cause, the intervening cause must completely break the causal chain between the original work-related injury and the ensuing condition. It didn't in this case. The person was scheduled to have surgery on that disc December 5, one day prior to, scheduled in September, one day prior to. He still had surgery on that same herniated disc after our occurrence. The injury in question... The herniation of that disc changed. Yeah, it made it bigger. It was already there, and it made it bigger. In a sense, it aggravated or worsened. But what the case law says, you have to completely break the chain. And if the initial work-related injury is a contributing part, you don't break the causal chain. Counselor Fisher-Lumber said in his presentation that there was a major change in symptomatology and clinical presentation. And that's not true, too. We'll get to that in a moment.  ...as to whether or not there was a break in the causal chain. Or are you saying that it is only a change in the actual condition itself? It's a change in the actual condition by Vogel, and it doesn't matter how those intervening conditions worsen the condition. All three of those autoaccidents in Vogel worsened to the point where he had a completely different surgery because of the pseudoarthritis that developed. In this case, there really isn't a dramatic change. He was on pain medication, couldn't live with the pain, couldn't live with his pain anymore, needed the back surgery, was scheduled to have the back surgery, had right leg pain, and then in September of 2008, 15 days after the MRI that was done September 10th, he was complaining of left leg pain. And they try to argue that his symptoms were worsening. Was the surgery that was recommended prior to the automobile accidents involving L45 at all? The surgery was... Or was it merely L34? I think that the initial surgery they were going to do was a microdiscectomy at that one level. At L34? Because the disc became larger, they felt that they would expand the surgery for the damaged disc to that level as well. That disc was already there. That disc was already damaged, and all we did was make it bigger. We aggravated or worsened. Every one of these physicians said that we aggravated or worsened. None of these physicians said we broke the causal chain. They all said aggravated or worsened. And they did surgery on the same disc that were already damaged. And Dr. Kennedy said that if we take Justice Hoffman's argument and we're saying, okay, we're having another disc involved, remember Dr. Kennedy's statement. That disc which was already damaged was put in a weakened position or more vulnerable because of it. And he was in a more vulnerable weakened condition when the second injury occurred. And under Vogel, they're responsible. They can't walk away from this and say we're not responsible because the condition was worse or aggravated. And if we do that, then what would happen again if this guy was going home after my shift, got in a minor fender bender, hurt his back, and said, you know, it's bigger now. Okay, we're going to have to do this procedure. And, you know, your employer is no longer responsible for any of this. And what happens if you didn't have insurance? You know, that's why the appellate court put Vogel in. When you put someone in a weakened position because of the accident, and they're not at MMI, and this guy wasn't at MMI, and they become vulnerable, that's the purpose of the act to protect that person and give them that extra protection. And that's what should apply here. Where's the evidence in the record that there was any implication of L4-5 prior to the motor vehicle accident? 2007, Your Honor. I'm sorry, December 4, 2006. There's a lot of mislabeling of the disk here because the guy has a transitional. You'll see when you read what people call L3-L4 is L4-L5 or what they call. Well, this person already had, if you look at the MRI, December 4, 2006, two herniated disks. When you look at the report of Dr. Chu, the expert, who was asked to look at the films prior to and after December 4th to include the more sophisticated CT myelogram, he said that there was two herniated disks present September of 2008 on an MRI. In reviewing them, they haven't dramatically changed. It's consistent with what was shown in a more sophisticated. What's your take on her representation that the radiologist filed an addendum saying there wasn't? He actually looked at the one film in December of 2008 and then found a change, and then he did the more sophisticated post-myelogram CT. And you've heard arguments about the sophistication of tests. And then after that additional test was done, he issued his report, and the report indicated that there was always two herniated disks and that they haven't materially changed. And that was the expert that Dr. Kitchens, wasn't my expert. Weren't the two herniated disks that Chu spoke of? Chu, Dr. T.H. Chu. Is L2-3 and L3-4? Right, but they're mislabeled. This guy has a transitional vertebrae. So you'll see when we argue. There are only two disks. Is that what you're saying? We're saying two disks. There's only two disks. And we're not going to label them L2, L3, L4 or L3, L4, L5. We're talking about the same two disks. And the same two disks have been herniated for some time. And the same disks that we added to the surgical procedure that was already herniated, our condition, according to the one doctor, made the herniation larger and more central. But the disk was ready in a weakened position, and that's what Vogel talks about. So we ask that you reverse the decision of the Industrial Commission, apply the correct law, in this case Vogel, and find that the injury or occurrence that happened as a result of National Freight's employment didn't break the causal chain. Thank you very much for all your time and attention. Thank you, Counsel Wall, for your arguments in this matter this morning. We'll take them under advisement, a written dispositional issue, and due court. We'll stand at brief recess.